1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD C. SUTHERLAND,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 3:09-cv-5549-BHS-KLS

REPORT AND RECOMMENDATION

Noted for April 22, 2011

        This matter is before the Court on plaintiff's filing of a motion for an award of attorney's

fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing plaintiff's motion, defendant's response to that

motion, plaintiff's reply thereto, and the remainder of the record, the undersigned submits the

following Report and Recommendation for the Court's review.

FACTUAL AND PROCEDURAL HISTORY

        On September 27, 2010, the undersigned issued a Report and Recommendation, finding

the administrative law judge ("ALJ") had erred in determining plaintiff to be not disabled. See

ECF #23.  Specifically, the undersigned found the ALJ erred in rejecting the opinion of Mike

Myers, PAC, a primary treatment provider, that plaintiff was limited to sedentary work, and in

failing to explain why he did not adopt all of the mental functional limitations assessed by two

REPORT AND RECOMMENDATION - 1

non-examining, consultative physicians, William Lysak, Ph.D., and Bruce Eather, Ph.D. See id. Because of these errors, the undersigned concluded it was unclear whether the residual functional capacity assessed by the ALJ or the ALJ's step five determination were supported by substantial evidence, and therefore recommended that the matter be remanded to defendant for the purpose of conducting further administrative proceedings in accordance with the findings contained in the Report and Recommendation. See id.

Plaintiff filed objections to the undersigned's Report and Recommendation on October 11, 2010. See ECF #24.  On December 13, 2010, the Report and Recommendation was adopted by the Court, although the Court limited the assessment of plaintiff's residual functional capacity on remand to the medical evidence provided by Dr. Lysak, Dr. Eather and Mr. Myers. See ECF #25.  Plaintiff now seeks an award of attorney's fees and expenses pursuant to the EAJA, which defendant opposes.  Specifically, defendant argues plaintiff's motion should be denied because: (1) no fee agreement between plaintiff and plaintiff's counsel covering work in federal court has been provided; (2) defendant's position was substantially justified; and (3) the fee request is not reasonable. See ECF #30.  For the reasons set forth below, the undersigned finds that although an award of attorney's fees and expenses is warranted in this case, the attorney's fees award should be reduced to the extent noted herein.

<u>DISCUSSION</u>

The EAJA provides in relevant part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

REPORT AND RECOMMENDATION - 2

28 U.S.C. § 2412(d)(1)(A).  Thus, to be eligible for attorney's fees under the EAJA: (1) the

claimant must be a "prevailing party"; (2) the government's position must not have been

"substantially justified"; and (3) no "special circumstances" exist that make an award of attorney

fees unjust.  Commissioner, Immigration and Naturalization Service v. Jean, 496 U.S. 154, 158

(1990).  Defendant does not contest plaintiff status as a prevailing party here, nor has he argued

special circumstances exist making an award of attorney fees unjust.

A.      Need for Attorney Fee Agreement

In support of his argument that attorney's fees for work performed in federal court may

not be paid under the EAJA, without a properly executed fee agreement therefor, defendant cites

the Ninth Circuit's decision in Clark v. Astrue, 529 F.3d 1211 (9th Cir. 2008).  As plaintiff notes,

however, Clark concerns attorney's fees paid pursuant to Section 406 of the Social Security Act,

not the EAJA.  Indeed, no mention of the latter statute or its provisions is made anywhere within

that decision.  Accordingly, Clark is entirely inapposite here.  The undersigned, therefore, rejects

defendant's argument concerning this issue.

B.      Defendant's Position

In terms of defendant's position in this matter, the undersigned further finds that it was

not substantially justified.  For defendant's position to be found to be "substantially justified,"

normally this requires an inquiry into whether defendant's conduct was "'justified in substance

or in the main' – that it, justified to a degree that could satisfy a reasonable person" – and "had a

'reasonable basis both in law and fact.'"  Gutierrez v. Barnhart, 274 F.3d 1255, 1258 (9th Cir.

2001) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)); Penrod v. Apfel, 54 F.Supp.2d

961, 964 (D. Ariz. 1999) (citing Pierce, 487 U.S. at 565); see also Jean, 496 U.S. at 158 n.6;

Flores v. Shalala, 49 F.3d 562, 569-70 (9th Cir. 1995).  Defendant has the burden of showing his

REPORT AND RECOMMENDATION - 3

1    position was substantially justified. <u>Gutierrez</u>, 274 F.3d at 1258.

2          Defendant's position must be "*as a whole*, substantially justified." <u>Gutierrez</u>, 274 F.3d at

3    1258-59.  As the Ninth Circuit has explained:

> The plain language of the EAJA states that the "'position of the United States'
> means, in addition to the position taken by the United States in the civil
> action, the action or failure to act by the agency upon which the civil action is
> based." 28 U.S.C. § 2412(d)(2)(D); *Jean*, 496 U.S. at 159, 110 S.Ct. 2316
> (explaining that the "position" relevant to the inquiry "may encompass both
> the agency's prelitigation conduct and the [agency's] subsequent litigation
> positions").  Thus we "must focus on two questions: first, whether the
> government was substantially justified in taking its original action; and,
> second, whether the government was substantially justified in defending the
> validity of the action in court." *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir.
> 1988).

<u>Id.</u> at 1259 (defendant must establish it was substantially justified in terms of ALJ's underlying

conduct and in terms of its litigation position defending ALJ's error).

          An ALJ must explain in his or her decision why "significant probative evidence has been

rejected." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984); <u>see</u>

<u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605,

610 (7th Cir. 1984).  The functional assessment of Drs. Lysak and Eather constituted significant

probative evidence.  Indeed, as noted in the undersigned's Report and Recommendation, the ALJ

expressly stated he was adopting that assessment. <u>See</u> ECF #23, p. 19.  But also as noted therein,

the ALJ failed to explain why he did not adopt all of the mental functional limitations those two

medical sources found, which clearly called into question the accuracy and completeness of the

ALJ's residual functional capacity assessment, as well as the propriety of the ALJ's step five

determination.  It should be noted, furthermore, that even though plaintiff did raise this issue in

his opening brief, defendant did not directly respond to it, indicating defendant himself felt the

ALJ's conduct here was not substantially justified.

REPORT AND RECOMMENDATION - 4

As for the opinion of Mr. Myers, plaintiff's primary treatment provider, defendant's own regulations provide that while medical sources such as physician's assistants are not "acceptable medical sources," evidence from such "other" sources may be used to "show the severity" of a claimant's ability to work. <u>See</u> <u>Gomez v. Chater</u>, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d).  In addition, SR 06-03p was issued on August 9, 2006, for the purpose of clarifying how opinions from such other medical sources are considered:

> . . . With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. . . .

> Although 20 CFR 404.1527 and 416.927 do not address explicitly how to evaluate evidence (including opinions) from "other sources," they do require consideration of such evidence when evaluating an "acceptable medical source's" opinion.  For example, SSA's [Social Security Administration's] regulations include a provision that requires adjudicators to consider any other factors brought to our attention, or of which we are aware, which tend to support or contradict a medical opinion.  Information, including opinions, from "other sources"-both medical sources and "non-medical sources"-can be important in this regard. . . .

> As set forth in regulations at 20 CFR 404.1527(b) and 416.927(b), we consider all relevant evidence in the case record when we make a determination or decision about whether the individual is disabled. Evidence includes, but is not limited to, opinion evidence from "acceptable medical sources," medical sources who are not "acceptable medical sources," and "non-medical sources" who have seen the individual in their professional capacity.  The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . .

> . . .

> Opinions from "other medical sources" may reflect the source's judgment

1

2

about some of the same issues addressed in medical opinions from
"acceptable medical sources," including symptoms, diagnosis and prognosis,
what the individual can still do despite the impairment(s), and physical and
mental restrictions.

3

4

. . .

5

6

7

8

9

The fact that a medical opinion is from an "acceptable medical source" is a
factor that may justify giving that opinion greater weight than an opinion from
a medical source who is not an "acceptable medical source" because . . .
"acceptable medical sources" "are the most qualified health care
professionals."  However, depending on the particular facts in a case, . . . an
opinion from a medical source who is not an "acceptable medical source" may
outweigh the opinion of an "acceptable medical source," including the
medical opinion of a treating source. . . .

10

11

12

13

14

15

16

SSR 06-03p, 2006 WL 2329939 *3-*5.  As noted in the Report and Recommendation, though,

the ALJ did not give valid reasons for rejecting the opinion of Mr. Myers.  But since Mr. Myers

was one of plaintiff's primary treatment providers, and in light of the above regulatory language

regarding the importance of such other medical source evidence, here too the ALJ's assessment

of plaintiff's residual functional capacity and resulting step five determination – and defendant's

defense thereof in this Court – cannot be substantially justified.

17

C.      Reasonableness of Plaintiff's Attorney's Fees Request

18

19

20

21

22

23

24

25

26

Before awarding attorney's fees pursuant to the EAJA, the Court must determine whether

the attorney fees being requested are "reasonable." Jean, 496 U.S. at 161; see also 28 U.S.C. §

2412(d)(1)(A) ("'fees and other expenses' includes . . . reasonable attorney fees").  The test to be

used in determining what attorney fees are reasonable was set forth in Hensley v. Eckerhart, 461

U.S. 424 (1983), which dealt with recovery of attorney's fees under 42 U.S.C. § 1988.  That test

"also is applicable to awards of fees under the EAJA." Sorenson v. Mink, 239 F.3d 1140, 1145

n.2 (citing Jean, 496 U.S. at 161 (stating once private litigant has met eligibility requirements for

EAJA fees, district court's task of determining what fee is reasonable is essentially same as that

REPORT AND RECOMMENDATION - 6

described in <u>Hensley</u>)); <u>see also</u> <u>Haworth v. State of Nevada</u>, 56 F.3d 1048, 1051 (9th Cir. 1995) (noting case law construing what is "reasonable" fee applies uniformly to all federal fee-shifting statutes) (quoting <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562 (1992)).

In determining "the amount of a reasonable fee," the "most useful starting point" for the Court "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Hensley</u>, 461 U.S. at 433. To that end, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." <u>Id.</u> "Where the documentation of hours is inadequate," though, the Court "may reduce the award accordingly." <u>Id.</u> The Court also "should exclude from this initial fee calculation hours that were not 'reasonably expended,'" and the prevailing party's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." <u>Id.</u> at 434.

"The product of reasonable hours times a reasonable rate," however, "does not end the inquiry." <u>Id.</u> Rather, the district court also must consider "the important factor of the 'results obtained.'" <u>Id.</u> That is, did the prevailing party "achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"[1] <u>Id.</u> The Supreme Court went on to state:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every

---

[1] In some cases, the district court also may need to address the question of whether the prevailing party failed "to prevail on claims that were unrelated to the claims on which he succeeded." <u>Id.</u> This will be true where "distinctly different claims" are raised, and the "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" <u>Id.</u> at 434-35. On the other hand, in those cases that involve "a common core of facts" or that "will be based on related legal theories," where the underlying "lawsuit cannot be viewed as a series of discrete claims," the district court instead "should focus on the significance of the overall relief obtained" by the prevailing party "in relation to the hours reasonably expended on the litigation." <u>Id.</u> at 435. This matter more resembles the latter situation in that, while plaintiff did not prevail on all the issues he raised, there is a common core of facts involved, and he achieved significant relief in the form of reversal of the ALJ's non-disability determination.

REPORT AND RECOMMENDATION - 7

1    contention raised in the lawsuit.

2    Id.  Even so, as noted above, "the fee applicant bears the burden of establishing entitlement to an

3    award and documenting the appropriate hours expended and hourly rates." Id. at 437.

4        The district court "has discretion in determining the amount of a fee award." Id.; see also

5    Oklahoma Aerotronics, Inc. v. United States, 943 F.2d 1344, 1347 (D.C. Cir. 1991) (decision on

6    how much to trim from claim for fees is committed to district court's discretion) (citing Pierce v.

7    Underwood, 487 U.S. 552, 571 (1988)).  However, the district court must "provide a concise but

8    clear explanation of its reasons for the fee award." Hensley, 461 U.S. at 437.  Defendant argues

9    that because plaintiff's counsel is experienced in the area of disability law and should be able to

10   efficiently handle "this routine case," the amount of attorney's fees requested is not reasonable,

11   and the Court therefore should award less than the full amount requested, though defendant fails

12   to state exactly how much less should be awarded.

13       Decisions from other district courts regarding the reasonableness of the number of fee

14   hours charged to the government provide some guidance.[2]  However, the determination as to

15   which hours reported were reasonably expended "must be made in the context of the specific

16   case," and "what is reasonable in one case may be unreasonable in another." Bunn, 637 F.Supp.

17   at 469-70 (reasonableness of hours expended depends on complexity of case, number of

18   reasonable strategies pursued, and responses necessitated by opponent's tactics) (citing Ramos v.

19   Lamm, 713 F.2d 546, 554 (10th Cir. 1983)).  In addition, the district court "must 'weigh the

20   hours claimed against [its] own knowledge, experience, and expertise of the time required to

_____

[2] For example, some decisions indicate that for social security cases, "compensated hours generally range from" 20 to 40. DiGennaro v. Bowen, 666 F.Supp. 426, 433 (E.D.N.Y. 1987); Patterson v. Apfel, 99 F.Supp.2d 1212, 1214 and n.2 (C.D. Cal. 2000) (finding 33.75 hours claimed to be spent reasonable and noting in general approved range of between 20 and 46 hours for services performed before district court); Bunn v. Bowen, 637 F.Supp. 464, 470 (E.D.N.C. 1986) (stating that never before had 51 hours of compensable time been claimed before it in social security cases).  In contrast, the District Court for the Eastern District of Wisconsin has awarded EAJA attorney's fees based on hours claimed in the range of 38 to 67. Wirth v. Barnhart, 325 F.Supp.2d 911, 914 (E.D. Wis. 2004).

REPORT AND RECOMMENDATION - 8

complete similar activities.'" Id. at 470 (citing Johnson v. Georia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974)).

Where the issues addressed in the prevailing party's briefs "were complex, of some considerable length, or the law was in flux," a significant "expenditure of time might well be justified." Id.; see also Patterson, 99 F.Supp.2d at 1213 (finding that presentation of plaintiff's claims required significantly more factual development and legal analysis than was required at administrative level and that case raised some issues that were not routine); DiGennaro, 666 F.Supp. at 433 (stating district court may adjust fee based on novelty and difficulty of questions considered).  One district court also has noted that "[s]ocial security cases are fact-intensive and require a careful application of the law to the testimony and documentary evidence, which must be reviewed and discussed in considerable detail." Patterson, 99 F.Supp.2d at 1213.

Other "special factors" also may "justify granting an award for a greater than average number of hours." DiGennaro, 666 F.Supp. at 433 (noting, for example, that nature of plaintiff's disability in that case required additional time for telephone communications, that counsel were brought in only at district court level years after claim was instituted on pro se basis requiring review of numerous documents and transcripts, and that counsel needed to reconstruct and supplement medical evidence from examinations conducted eight years earlier due to ALJ's failure to do so).  The undersigned does agree with defendant that there was nothing necessarily complex or unique about the issues in this case.

Nevertheless, the undersigned also does not find the request for attorney's fees here to be wholly unreasonable.  On the other hand, the undersigned finds the 16.7 hours plaintiff's counsel spent preparing the reply brief in this matter to be somewhat excessive given, as defendant notes, plaintiff's counsel's experience in the area of disability law and the fact that a fair portion of the

REPORT AND RECOMMENDATION - 9

reply brief was repetitive of the opening brief.  As such, the amount of time awarded for work spent on the reply brief should be reduced to 10.0 hours.  The undersigned, therefore, finds the total number of hours of billable time should be reduced from 46.1 to 39.4, and the total amount of attorney's fees should be reduced from $8,621.43 to $7,448.53.[3]  The request for expenses in the amount of $26.73 should be granted in full.

Plaintiff also is entitled to the full amount of his attorney's fees incurred in litigating the attorney's fees issue.  See Love v. Reilly, 924 F.2d 1492, 1497 (9th Cir. 1991) ("[U]nder the EAJA, the prevailing party is automatically entitled to attorney's fees for any fee litigation once the district court has made a determination that the government's position lacks substantial justification."); see also Real Property Known as 22249 Dolorosa Street, 190 F.3d at 985.  A supplemental request for an additional $735.25 in attorney's fees for a total of 4.2 hours of work performed in drafting, editing and filing the EAJA attorney's fees reply brief at a billable rate of $175.06 has been made by plaintiff.[4]  The Court finds this amount of time to be reasonable, and therefore grants plaintiff's request here as well.

CONCLUSION

Based on the foregoing discussion, the Court should grant plaintiff's request for EAJA attorney's fees in the amount of $8,183.78 ($7,448.53 + $735.25) and expenses in the amount of $26.73.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

---

[3] A total of 16.7 hours were spent researching, drafting , editing and filing the reply brief.  See ECF #28, p. 2.  At a billable rate of $175.06 (see id. at p. 3) – the reasonableness of which defendant has not contested – the full amount of attorney's fees being requested for those tasks totals $2,923.50.  A reduction of 16.7 hours to 10 hours results in a reduction of attorney's fees in the amount of $1,172.90, which in turn results in an adjustment in the total amount of attorney's fees being requested to $7,448.53.

[4] An additional 0.9 hours of work performed in regard to the actual EAJA attorney's fees motion at the same billable rate already is included in the above $7,448.53 amount.  See ECF #28 p. 3.

REPORT AND RECOMMENDATION - 10

72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 22, 2011**, as noted in the caption.

        DATED this 7th day of April, 2011.


                                        <u>Karen L. Strombom</u>
                                        Karen L. Strombom
                                        United States Magistrate Judge

REPORT AND RECOMMENDATION - 11